AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone 12 Pro Max<br>Seizure No. 2023250300029501-0006<br>("Target Device") | )<br>)<br>)  Case No.  23MJ8281<br>)<br>)<br>) |

**FILED**
4/27/2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    vyc    DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Jon Dellinger*
Applicant's signature

Jon Dellinger, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:    April 27, 2023

Judge's signature

City and state:   San Diego, California        Hon. Lupe Rodriguez, Jr, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Jon Dellinger, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, state as follows:

# INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

Black iPhone 12 Pro Max
Seizure No. 2023250300029501-0006
("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963, Importation of a Controlled Substance and Conspiracy to do the same as further described in Attachment B.

The requested warrant relates to the investigation and prosecution of Suzie ACOSTA Lopez (ACOSTA) for importing approximately 75.56 kilograms of methamphetamine and 7.36 kilograms of heroin from Mexico into the United States. The **Target Device** is currently in the custody of Homeland Security Investigations (HSI) in the evidence locker, located at 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

# BACKGROUND

3. I have been employed as a Special Agentwith  since November 2019. I am currently assigned to the HS) Assistant Special Agent in Charge (ASAC), Calexico, California Imperial Valley Border Enforcement Security Task Force (IV-BEST).

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the Calexico, California West and East Ports of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))  can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data,

slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

6.    On April 7, 2023, at approximately 8:50 a.m., Customs and Border Protection Officer (CBPO) C. Velazquez, P. Morals, and J. Lizarraga, who are assigned to the Anti-Terrorist and Contraband Enforcement Team (A-TCET) at the Calexico, California West Port of Entry, were conducting a pre-primary operation with Canine Enforcement Officers (CEO) L. Marino.

7.    During the operation, a Silver 2011 Hyundai Sonata bearing California license plate 9DHV209 was approaching vehicle lane #1. As the Hyundai was approaching lane #1, CEO Marino utilized his Human Narcotics Detection Dog (HNDD), to conduct a free air sniff of the Hyundai. CEO Marino observed his HNDD make a

3

positive alert to the trunk of the Hyundai by making a pinpoint stare to the trunk seam. CEO Marino informed CBPO C. Velazquez of the K9 alert. CBPO C. Velazquez approached the Hyundai and contacted the female driver, later identified by her U.S. Passport and California driver's license, as Suzie Maritza ACOSTA Lopez (ACOSTA). CBPO Velazquez obtained a negative customs declaration from ACOSTA and asked if the Hyundai belonged to her. ACOSTA said she was the sole owner of the Hyundai and was headed home to Indio, CA.

8. CBPO Velazquez instructed ACOSTA to open the trunk of Hyundai. ACOSTA complied and opened the trunk of the Hyundai. CBPO Velazquez inspected the trunk and observed cellophane wrapped packages visible in the rear quarter panels. CBPO Morales called a "walk-off" via radio and ACOSTA along with two minors who also were in the vehicle were escorted f to the vehicle secondary office for further processing.

9. At approximately 8:57 a.m., CBPO N. Martinez-Martinez was assigned to the Z-portal (x-ray) and conducted a scan of the Hyundai, which revealed anomalies in both the left and right rear quarter panels, floors, backseat rests, rear head rest speaker area, spare tire, and rear bumper.

10. The Hyundai was inspected in the lift area by CBPO J. Martinez and CBPO C. Velazquez with assistance from the California Army National Guard soldiers assigned to the Counterdrug Task Force. Upon further inspection, a total of 160 cellophane wrapped packages were retrieved from the left and right quarter panels, rear bumper, front passenger floor, and rear passenger floor, behind the rear headrest speaker area, and center console. A total of 6 packages wrapped in black tape were discovered and retrieved from inside both rear seats. Photographs were taken by CBPO J. Martinez as packages were being located.

11. At approximately 10:57 a.m., CBPO P. Morales, while being witnessed by CBPO J. Martinez, field tested a cellophane wrapped package containing a crystal substance using NIK methamphetamine reagent/narcotic test kit, which yielded positive results for methamphetamine. At approximately 10:58 a.m., SCBPO I. Martinez, while

being witnessed by CBPO J. Martinez, field tested a black tapped package containing a brown powdery substance using narcotic test kit Nark II, which yielded positive results for heroin.

12. Due to the similarities between the packages, 160 packages were determined to contain methamphetamine and had a total weight of 75.56 kilograms (162.17 pounds). Six (6) packages were determined to contain heroin and had a had a total weight of 7.36 kilograms (16.22 pounds). Acosta was placed under arrest for importation of controlled substances, in violation of 21 U.S.C. §§ 952, 960.

13. CBPO Officers found the Target Device on the person of ACOSTA. The Target Device was placed into evidence at the time of her arrest. At approximately 12:50 p.m., SA J. Dellinger, SA B. Robinson and SA T. Pieroni arrived and searched through ACOSTA's personal belongings. ACOSTA had one (1) iPhone 12 Pro Max cellular telephone (**Target Device**) in her possession, which was seized as evidence.

14. On April 7, 2023, at approximately 2:19 p.m., SA Dellinger advised ACOSTA of her *Miranda* rights, in English, and witnessed by SA Robinson and SA Pieroni. ACOSTA acknowledged and understood her rights and did wish to speak with Special Agents without the presence of an attorney. ACOSTA also initialed after each *Miranda* Right, acknowledging she understood her rights.

15. ACOSTA said she knew narcotics were concealed in her vehicle. She said that this arrest was the second time she crossed narcotics through the Calexico West, California Port of Entry. ACOSTA said she was paid $6,000 USD to cross the narcotics and deliver them to Indio, CA.

Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to

5

communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on March 7, 2023, up to and including April 7, 2023.

**METHODOLOGY**

16.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books and can be minicomputers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

6

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

20. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of ACOSTA's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Jon Dellinger*
Jon Dellinger
Special Agent, HSI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of April, 2023.

_____  3:24 p.m.
HONORABLE LUPE RODRIGUEZ, JR.
United States Magistrate Judge

8

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black iPhone 12 Pro Max
>Seizure No. 2023250300029501-0006
>("Target Device")

The **Target Device** is currently in the possession of Homeland Security Investigations in the evidence locker, located at 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of March 7, 2023 to April 7, 2023:

a. tending to identify efforts to import methamphetamine, heroin or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, heroin or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, heroin or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, §§ 952, 960, and 963.